# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JAMES DAVIS and WILLIAM B. GADDY, )
                                 )
         Plaintiff, )
                                 )    No. 03 C 8631
                                 )
    v.                         )    Judge Suzanne Conlon
                                 )
CITY OF CHICAGO, et al.        )
                                 )    Magistrate Judge Ashman
         Defendants. )

DOCKETED
FEB 2 6 2004

FILED
FEB 2 5 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

To:    Amy Elizabeth Paluch Epton
        Whitfield & McGann
        2 N. LaSalle St., Suite 1601
        Chicago, IL 60602

        **PLEASE TAKE NOTICE** that on February 25, 2004, I filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, the attached **Defendants City, Reyes, Killman, Rooney, and Haran's Answer to Plaintiffs' Amended Complaint** on behalf of the City of Chicago, Norma Reyes, James Haran, Charles Killman, and William Rooney an exact copy is attached hereto.

                                Respectfully submitted,

                                MARA S. GEORGES
                                Corporation Counsel of the
                                City of Chicago

                                BY: _Allison S. Heverin_
                                Allison S. Heverin
                                Assistant Corporation Counsel

30 N. LaSalle Street, Suite 1020
Chicago, Illinois 60602
(312) 744-0449

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| JAMES DAVIS and WILLIAM B. GADDY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 8631 |
| CITY OF CHICAGO, a municipal corporation; | ) | |
| JAMES HARAN, in his official capacity, | ) | |
| and in his individual capacity; STEVEN | ) | |
| BATINICH, in his official capacity, and in his | ) | Magistrate Judge Ashman |
| individual capacity; IRMA RODRIGUEZ, in her | ) | |
| official capacity, and in' her individual capacity; | ) | |
| CHARLES KILLMAN, in his official capacity, | ) | |
| and in his individual capacity; WILLIAM | ) | |
| ROONEY, in his official capacity, and in his | ) | |
| individual capacity; and NORMA REYES, in her | ) | |
| official capacity, and in her individual capacity; | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED
FEB 2 6 2004
FEB 2 5 2004
MICHAEL W. DOBBINS
ch of d. District Court

### DEFENDANTS CITY, REYES, KILLMAN, ROONEY
### AND HARAN'S ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

Defendants City of Chicago ("City"), Norma Reyes ("Reyes"), Charles Killman

("Killman"), William Rooney ("Rooney"), and James Haran ("Haran") by their attorney, Mara S.

Georges, Corporation Counsel of the City of Chicago, respond to plaintiffs' Amended Complaint

("Amended Complaint") as follows:

<u>Nature of Action</u>

1.     This is an action for damages and equitable relief to redress the deprivation of
rights secured to Plaintiffs by virtue of the Family and Medical Leave Act of 1993, 29 U.S.C.
Section 2601 et seq., and by virtue of the Americans with Disabilities Act, 42 U.S.C. Section
12101 et seq. with a pendant state common law claims of Intentional Infliction of Emotional
Distress, and Civil Conspiracy, pursuant to 28 U.S.C. §1367.

<u>ANSWER:</u>

1



Defendants City, Reyes, Killman, Rooney, and Haran admit that plaintiffs purport to bring suit pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. and the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq.

Defendants City, Reyes, Killman, Rooney, and Haran further admit that plaintiffs also assert pendant state common law claims for intentional infliction of emotional distress and civil conspiracy.[1] Defendants deny that they violated any of plaintiffs' statutory or state common law rights and deny that plaintiffs are entitled to any relief.

<u>Jurisdiction and Venue</u>

2.    This Court has "federal question" subject matter jurisdiction over this suit pursuant to 28 U. S. C. § 1331, and jurisdiction over the pendant state claims of Intentional Infliction of Emotional Distress and Civil Conspiracy, pursuant to its supplemental jurisdiction found in 28 U.S.C. § 1367.

ANSWER:
       Defendants City, Reyes, Killman, Rooney, and Haran admit that the Court has jurisdiction over the subject matter of this action and that it may exercise supplemental jurisdiction under 28 U.S.C. § 1367.  Defendants deny the remaining allegations of this paragraph.

3.    Jurisdiction is also specially conferred pursuant to the provisions of the FMLA, 29 U.S.C. 2617(a)(2) and 28 U.S.C. Section 1343.

ANSWER:
       Defendants City, Reyes, Killman, Rooney, and Haran admit that the Court has jurisdiction over the subject matter of this action.

4.    Venue is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(b) because all of the Defendants reside and are domiciled within this judicial district.

ANSWER:
       Defendants City, Reyes, Killman, Rooney and Haran admit that venue is appropriate.

Defendants Reyes, Killman, Rooney, and Haran admit that they reside in and are employed by the City of Chicago.

_____

[1]Defendants have filed a motion to dismiss plaintiffs' state law claims, and to dismiss all individual defendants from plaintiffs' claims under the Americans with Disabilities Act..

<u>Parties</u>

5.      Plaintiffs have met all administrative prerequisites to suit, in that they timely filed charges of disability discrimination with the Equal Employment Opportunity Commission. The Equal Opportunity Commission ("EEOC") issued a "right to sue" letter to Plaintiff James Davis on December 31, 2003, and issued a "right to sue" letter to Plaintiff William B. Gaddy on January 8, 2004, and this Amended Complaint has been filed within ninety (90) days after receipt of those "right to sue" letters. (See attached Exhibit "A," "right to sue" letter issued to Plaintiff James Davis; Exhibit "B," "right to sue" letter issued to Plaintiff William B. Gaddy).

<u>ANSWER:</u>

Defendants admit that plaintiffs filed an EEOC charge alleging disability discrimination and that the EEOC issued right to sue letters to plaintiffs on the dates mentioned in this paragraph and that this amended complaint has been filed within 90 days of the issuance of those letters. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph 5.

6.      Plaintiff James Davis is a citizen of the State of Illinois.

<u>ANSWER:</u>

Defendants City, Reyes, Killman, Rooney, and Haran admit that, according to the City's records, Plaintiff Davis is a citizen of the State of Illinois.

7.      Plaintiff William B. Gaddy is a citizen of the State of Illinois.

<u>ANSWER:</u>

Defendants City, Reyes, Killman, Rooney, and Haran admit that, according to the City's records, Plaintiff Gaddy is a citizen of the State of Illinois.

8.      At all relevant times, Defendant CITY OF CHICAGO was Plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. 2611(4), and within the meaning of the ADA, 42 U.S.C. 12101 et seq., employing more than fifty (50) employees for each working day, during each of twenty (20) or more calendar weeks, in each relevant calendar year.

<u>ANSWER:</u>

Defendant City admits that it is plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. 2611(4) and the ADA, 42 U.S.C. 12101 et seq. Defendants Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

3

9.    Plaintiffs, and each of them, had worked more than one thousand, two hundred and fifty (1,250) hours in the twelve (12) months preceding each of their requests for medical leave.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 9 due to its failure to reference a time frame for the alleged "requests for medical leave."

Defendants City and Killman admit that on or about June 17, 2003, Davis submitted an application for intermittent family and medical leave at which time it was determined that he had worked for the City for at least 12 months preceding the application and that he had worked 1,433 hours in the 12 month period preceding the application.

Defendants City and Killman admit that on or about January 8, 2002, William Gaddy submitted an application for intermittent family and medical leave at which time it was determined that he had worked for the City for at least 12 months preceding the application and that he had worked 1,691 hours in the 12 month period preceding the application.

10.    At all relevant times, Defendant JAMES HARAN was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. 2611(4).

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegation contained in paragraph 10 due to the vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Haran was employed by the City in the Department of Buildings as an Assistant Commissioner from at least November 2003 to the present.

Defendants City, Reyes, Killman, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Haran is an employer within the meaning of 29 U.S.C. § 2611(4).

11.    At all relevant times, Defendant STEVEN BATINICH was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiff James Davis' employer within the meaning of the FMLA, 29 U.S.C. 2611(4).

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 11 due to the

4

vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Steven Batinich was employed by the City in the Department of Buildings from at least November 2003 to the present.

Defendants City, Reyes, Killman, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Batinich is an employer within the meaning of 29 U.S.C. § 2611(4).

12.    At all relevant times, Defendant IRMA RODRIGUEZ was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiff William B. Gaddy's employer within the meaning of the FMLA, 29 U.S. C. 2611(4).

ANSWER:

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 12 due to the vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Irma Rodriguez was employed by the City in the Department of Buildings from at least November 2003 to the present.

Defendants City, Reyes, Killman, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Rodriguez is an employer within the meaning of 29 U.S.C. § 2611(4).

13.    At all relevant times, Defendant CHARLES KILLMAN was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. 2611(4).

ANSWER:

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 13 due to the vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Killman was employed by the City in the Department of Buildings from at least November 2003 to the present.

Defendant Killman denies that he was, at any time, plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

5

Defendants City, Reyes, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Killman is an employer within the meaning of 29 U.S.C. § 2611(4).

14.     At all relevant times, Defendant WILLIAM ROONEY was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiffs' employer within the meaning of the FMLA, 29 U. S. C. 2611(4).

ANSWER:

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 14 due to the vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Rooney was employed by the City in the Department of Buildings from at least November 2003 to the present.

Defendants City, Reyes, Killman Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Rooney is an employer within the meaning of 29 U.S.C. § 2611(4).

15.     At all relevant times, Defendant NORMA REYES was employed by Defendant CITY OF CHICAGO, and at all relevant times was Plaintiffs' employer within the meaning of the FMLA, 29 U.S.C. 2611(4).

ANSWER:

Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 15 due to the vagueness of the phrase "at all relevant times."

Further answering, defendants City, Reyes, Killman, Rooney, and Haran admit that Reyes was employed by the City in the Department of Buildings from at least November 2003 to the present.

Further answering, Defendants City, Reyes, Killman, Rooney, and Haran lack information and knowledge sufficient to form a belief as to the truth of whether Reyes is an employer within the meaning of 29 U.S.C. § 2611(4).

Factual Allegations

16.     Plaintiff James Davis was hired by Defendant, City of Chicago, in or around December 1978, and was promoted to Supervisor in or around 1989.

ANSWER:

Defendants City and Killman deny that Davis was hired and promoted on the dates alleged in this paragraph.

Further answering, defendants City and Killman admit that according to records maintained by the City, Davis was hired by the City on or about April 2, 1979 and promoted to supervisor in or around 1986.

Defendants Reyes, Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 16.

17.    Plaintiff James Davis suffers from severe and permanent medical conditions, including but not limited to a prior triple-bypass coronary operation, a prior operation to repair the complete caudation of his right leg, suffers from severe diabetes, hypertension, coronary artery disease, and has complete caudation of his left leg.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of plaintiffs' amended complaint.

Further answering defendants City and Killman admit that on July 17, 2003, Davis submitted a certification from a health care provider in conjunction with an application for intermittent family medical leave which states that "patient has diabetes and coronary artery disease, the former needs frequent visits to monitor complications," and that "pt has disease flare episode that are intermittent and can occur long term" and that "episodes of incapacity are unpredictable."

18.    At the time this lawsuit was filed, Plaintiff James Davis was approximately sixty-one (61) years of age, and considering the possibility of early retirement, with the use of the pension benefits to which he was entitled by the collective bargaining agreement, and was therefore particularly and peculiarly susceptible to arbitrary and capricious employment actions.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of plaintiffs' amended complaint.

19.    At all relevant times, Plaintiff James Davis performed his employment responsibilities in a manner that met and/or exceeded Defendants' reasonable employment expectations.

7

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of plaintiffs' amended complaint due to the vagueness of the phrase "at all relevant times."

Further answering, Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Davis met Defendant City's reasonable employment expectations on November 7, 2003.

Defendants City and Killman deny that Davis consistently met or exceeded defendant's city's reasonable employment expectations at all times prior to November 7, 2003.

20. At all relevant times, Plaintiff James Davis' direct supervisor was Steven Batinich. At all relevant times, Plaintiff James Davis was also supervised by Defendant James Haran, Defendant Charles Killman, William Rooney, and Defendant Norma Reyes.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of plaintiffs' amended complaint due to the vagueness of the phrase "at all relevant times" and plaintiffs use of the word "supervised."

Defendants City, Reyes, Killman, Rooney, and Haran admit that Steven Batinich had some supervisory responsibilities relative to plaintiff Davis's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

Defendants City, Reyes, Killman, Rooney, and Haran deny that Killman had any supervisory responsibilities relative to plaintiff Davis's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

Defendants City, Reyes, Killman, Rooney, and Haran admit that Reyes, Rooney and Haran had some indirect supervisory responsibilities relative to plaintiff Davis's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

21. Plaintiff James Davis suffers from severe and permanent medical conditions, including but not limited to a prior triple-bypass coronary operation, a prior operation to repair the complete caudation of his right leg, suffers from severe diabetes, hypertension, coronary artery disease, and has complete caudation of his left leg, causing intermittent and unpredictable, temporary incapacity.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of plaintiffs' amended complaint.

8

Defendants City, Reyes and Killman admit that on July 17, 2003, Davis submitted a certification from a health care provider in conjunction with an application for intermittent family medical leave which states that "patient has diabetes and coronary artery disease, the former needs frequent visits to monitor complications," and that "pt has disease flare episode that are intermittent and can occur long term" and that "episodes of incapacity are unpredictable."

22.     Plaintiff James Davis notified Defendant, City of Chicago, of his disability in or around 2002, when he requested a reasonable accommodation. At that time, Defendant, City of Chicago, granted Plaintiff James Davis' reasonable accommodation, by certifying his eligibility for FMLA intermittent leave.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Davis ever requested, from any of them, a "reasonable accommodation" for any disability.

Further answering, Defendants City and Killman, admit that plaintiff Davis's request for intermittent family and medical leave for "diabetes mellitus," coronary artery disease," and "morbid obesity" was approved by the Building Department on April 10, 2001.

Defendants City, Reyes, Killman, Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of whether Davis has a "disability" as alleged in paragraph 22 of plaintiffs' amended complaint.

Defendants City, Reyes, Killman, Rooney and Haran deny that they are aware that plaintiff Davis was or his disabled within the meaning of the ADA.

Defendants Reyes, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of plaintiffs' allegations that Davis notified the City of any disability in 2002 or that he was certified as eligible for FMLA intermittent leave at that time.

23.     In or around March 2003, Plaintiff James Davis again certified his reasonable accommodation, by re-certifying his eligibility for FMLA intermittent leave.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Davis ever requested, from any of them, a "reasonable accommodation" for any disability.

Defendants Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of plaintiffs' allegations that Davis again certified his eligibility for FMLA intermittent leave in March 2003.

9

Defendants City, Reyes, and Killman, admit that on or about June 17, 2003, Davis submitted an application for intermittent family and medical leave which included a physician's certification stating that "patient has diabetes and coronary artery disease, the former needs frequent visits to monitor complications."

Defendants City, Reyes, and Killman deny that Davis submitted a physician's certification for FMLA intermittent leave in March 2003.

24.     On or about November 7, 2003, Plaintiff James Davis requested a reasonable accommodation from Defendants, by exercising his right to take intermittent FMLA leave, when he requested permission to leave work early because of the reoccurrence of plaintiff James Davis' FMLA certified illness. Defendants denied Plaintiff James Davis' request to leave work early.

ANSWER:
Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Davis ever requested, from any of them, a "reasonable accommodation" for any disability.

Defendant Rooney admits that on November 7, 2003, plaintiff Davis reported for work and then refused an order from Rooney and Batinich to work in the field and instead stated that he was taking "FMLA."

Defendants City, Reyes, Killman, Rooney and Haran, deny that plaintiff Davis exercised his right to take intermittent FMLA leave on November 7, 2003.

Defendants City, Reyes, Killman, and Rooney deny that Davis requested permission from any of them to leave work early on November 7, 2003 because of the reoccurrence of any illness or that they denied any such request.

Defendant Haran lacks knowledge and information sufficient to form a belief as to the truth of whether Davis requested permission from City, Reyes, Rooney and Killman to leave work because of illness on November 7, 2003 or whether they refused any such request.

Defendant Haran denies that Davis requested permission from him to leave work because of illness or that he refused any such request on November 7, 2003.

25.     On or about November 12, 2003, Defendants held a pre-disciplinary hearing, attended by Defendant James Haran, Defendant Steven Batinich, and Defendant Charles Killman, at which Defendant Steven Batinich compared Plaintiff's James Davis' FMLA certification to a "Get Out Of Jail Free" card.

10

<u>ANSWER:</u>

Defendant Reyes and Rooney lack knowledge and information sufficient to form a belief as to the truth of the allegations of this paragraph 25.

Defendants City, Killman and Haran admit that, on November 12, 2003, a predisciplinary hearing was held for plaintiff Davis, which was attended by Killman, Haran, Batinich, and Rodriguez. Also present at that meeting were plaintiffs' attorney Amy Epton, union steward Louis Flowers and, for part of the meeting, union representative Mike Sexton.

Defendant Killman denies that defendant Batinich compared plaintiff Davis' FMLA certification to a "Get out of Jail Free Card."

Further answering, Defendant Killman admits that at that meeting defendant Batinich stated "It's not a Get out of Jail Free Card" after attorney Epton stated that Davis was entitled to take FMLA leave on November 7, 2003.

Defendant Haran lacks knowledge or information sufficient to form a belief as to the truth of whether Batinich compared plaintiffs' FMLA certification to a "Get out of Jail Free Card."

26.     Following Plaintiff James Davis' pre-disciplinary hearing, Defendants James Haran, Steven Batinich, Irma Rodriguez, and Charles Killman consulted with Defendants William Rooney and Norma Reyes about Plaintiff James Davis' disciplinary suspension.

<u>ANSWER:</u>

Defendants City, Reyes, Killman, Rooney, and Haran lack knowledge and information sufficient to form a belief as to the truth of the allegations of this paragraph 26 because plaintiffs fail to identify with specificity what they mean by "following" the hearing and "consulted."

Defendants Reyes and Killman admit that sometime after the November 12, 2003 predisciplinary hearing and before November 14, 2003, Reyes spoke with Killman regarding a 15 day suspension for Davis.

Defendants City and Reyes, deny that Reyes spoke with Rooney, Haran, Batinich and Rodriguez regarding a suspension for Davis.

Defendants Rooney and Haran deny that they discussed a proposed suspension for Davis with Reyes.

Defendants Killman, Rooney and Haran admit that they discussed with each other and defendants Irma Rodriguez and Steven Batinich, on November 12, sometime after Davis and Gaddy's predisciplinary hearings, the issuance of a 15 calendar day suspension to Davis for his insubordination on November 7, 2003 by refusing a direct order to work in the field after having reported for work that morning.

27.    On or about November 17, 2003, Defendants suspended Plaintiff James Davis without pay, for a period of fifteen days.

ANSWER:
    Defendants, City, Reyes, and Rooney admit that they caused a suspension to be issued by Steven Batinich to Davis for fifteen calendar days for insubordination by refusing a direct order of Rooney and Batinich to work in the field after having reported for work in the morning on November 7, 2003.

    Defendants Killman and Haran deny that they suspended Davis as alleged in paragraph 27.

28.    On or about December 2, 2003, Plaintiffs James Davis and William B. Gaddy filed suit against Defendant City of Chicago, et al., alleging violation of the Family and Medical Leave Act, and alleging pendant state law claims of Intentional Infliction of Emotional Distress, and Civil Conspiracy, based upon Defendants' negative employment actions concerning the events of November 2003.

ANSWER:
    Defendants admit the plaintiffs filed a complaint as alleged in this paragraph, but deny that they took any negative employment actions against plaintiffs in violation of any federal, state or common law.

29.    During Plaintiff James Davis' employment with the City from approximately December 1978 until the present, Plaintiff James Davis has received every salary step increase available to him under the collective bargaining agreement by which Plaintiff James Davis and the city are contractually obligated. These salary step increases affect the value of the plaintiffs' pension benefits.

ANSWER:
    Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

30.    On or about January 16, 2004, by that collective bargaining agreement, Plaintiff James Davis was scheduled to receive a salary step increase, but was denied that salary step increase.

ANSWER:
    Defendants deny that Davis was entitled to automatically receive a salary step increase at any time in January 2004. Defendants admit that Davis did not receive a salary step increase in January 2004 pending a review of his performance in 60 days.

12

31.     Plaintiff James Davis' immediate supervisor told him that Plaintiff James Davis did not receive the salary step increase because of the suspension Plaintiff James Davis received as a result of the denial of his FMLA rights.

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

32.     Plaintiff James Davis repeatedly attempted to obtain the written notice of denial of the salary step increase, and repeatedly attempted to obtain the written notice of grounds for the denial, in accordance with the collective bargaining agreement, but Defendants failed to give Plaintiff James Davis this written notice. On February 6, 2004, Director of Administration Mary Ann Ciaravino told Plaintiff James Davis that she would give Plaintiff James Davis these written notifications, but despite repeated requests, failed to provide them.

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

33.     Plaintiff James Davis' pension benefits were negatively impacted by Plaintiff James Davis' failure to receive the salary step increase.

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

34.     Plaintiff William B. Gaddy was hired by Defendant, City of Chicago, in or around March 1979, and was promoted to Supervisor in or around 1993.

ANSWER:

Defendants City and Killman deny that Gaddy was hired and promoted on the dates alleged in this paragraph.

Further answering, defendants City and Killman admit that according to records maintained by the City, Davis was hired by the City on or about March 1, 1979 and promoted to supervisor in or around 1995.

Defendants Reyes, Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in this paragraph 34.

35.     Plaintiff William B. Gaddy suffers from severe and permanent medical conditions, including but not limited to: gout, arteriosclerosis, allergic rhinitis, and diabetes.

13

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

Further answering, defendants City, Reyes and Killman admit that on January 1, 2002, Gaddy submitted a certification from a health care provider in conjunction with an application for intermittent family medical leave which states that "patient has diabetes mellitus, hypertension and gouty arthritis."

36.    At the time this lawsuit was filed, Plaintiff William B. Gaddy was approximately fifty-five (55) years of age, and considering the possibility of early retirement, with the use of the pension benefits to which he was entitled by the collective bargaining agreement, and therefore was particularly and peculiarly susceptible to arbitrary and capricious employment actions.

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.

37.    At all relevant times, Plaintiff William B. Gaddy performed his employment responsibilities in a manner that met and/or exceeded Defendants' reasonable employment expectations.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 37 of plaintiffs' amended complaint due to the vagueness of the phrase "at all relevant times."

Further answering, Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Gaddy met and/or exceeded Defendant City's reasonable employment expectations on November 7, 2003.

38.    Plaintiff William B. Gaddy suffers from severe and permanent medical conditions, including but not limited to: gout, arteriosclerosis, allergic rhinitis, and diabetes, causing unpredictable, intermittent, and temporary incapacity.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 38 of plaintiffs' amended complaint.

14

Further answering, defendants City, Reyes and Killman admit that on January 1, 2002, Gaddy submitted a certification from a health care provider in conjunction with an application for intermittent family medical leave which states that "patient has diabetes mellitus, hypertension and gouty arthritis."

39.     At all relevant times, Plaintiff William B. Gaddy's direct supervisor was Defendant Irma Rodriguez. At all relevant times, Plaintiff William B. Gaddy was also supervised by Defendant Thomas [sic] Haran, Defendant Charles Killman, Defendant William Rooney, and Defendant Norma Reyes.

ANSWER:
Defendants City, Reyes, Killman, Rooney, and Haran lack information or knowledge sufficient to form a belief as to the truth of the allegations contained in paragraph 39 of plaintiffs' amended complaint due to the vagueness of the phrase "at all relevant times" and plaintiffs' use of the word "supervised."

Defendants City, Reyes, Killman, Rooney, and Haran admit that Irma Rodriguez had some supervisory responsibilities relative to plaintiff Gaddy's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

Defendants City, Reyes, Killman, Rooney, and Haran deny that Killman had any supervisory responsibilities relative to plaintiff Gaddy's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

Defendants City, Reyes, Killman, Rooney, and Haran admit that Reyes, Rooney and Haran had some indirect supervisory responsibilities relative to plaintiff Gaddy's employment as a Supervisor of Building Inspections in the City's Department of Buildings.

40.     Plaintiff William B. Gaddy notified Defendant, City of Chicago, of his disability in or around 1992. In or around 2001, Plaintiff William B. Gaddy requested a reasonable accommodation from Defendant. At that time, Defendant, City of Chicago, granted Plaintiff William B. Gaddy's reasonable accommodation, by certifying his eligibility for FMLA intermittent leave.

ANSWER:
Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Gaddy ever notified them of a "disability" or requested, from any of them, a "reasonable accommodation" for any disability.

Further answering, Defendants City and Killman, admit that plaintiff Gaddy submitted a request for intermittent family and medical leave on April 17, 2001 with a physician's certification stating that Gaddy's diagnosis is "diabetes mellitus, hypertension and gouty arthritis," which was approved by the Building Department on June 28, 2001.

15

Defendants City, Reyes, Killman, Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of whether Gaddy informed the City that he had a "disability" in 1992 as alleged in this paragraph 40 of plaintiffs' amended complaint.

41.     In 2003, Plaintiff William B. Gaddy again certified his reasonable accommodation, by re-certifying his eligibility for FMLA intermittent leave.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Gaddy ever requested from any of them a "reasonable accommodation" for any disability.

Defendants Rooney and Haran lack information or knowledge sufficient to form a belief as to the truth of plaintiffs' allegations that Gaddy again certified his eligibility for FMLA intermittent leave in 2003.

Defendants City, Reyes, and Killman deny that Gaddy submitted a physician's certification for FMLA intermittent leave in 2003.

42.     On or about November 7, 2003, Plaintiff William B. Gaddy requested a reasonable accommodation from Defendants, by exercising his right to take intermittent FMLA leave, when he requested permission to leave work early because of the reoccurrence of plaintiff William B. Gaddy's FMLA certified illness. Defendants denied Plaintiff William B. Gaddy's request to leave work early.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiff Gaddy ever requested, from any of them, a "reasonable accommodation" for any disability.

Defendant Rooney admits that on November 7, 2003, he learned from Rodriguez that plaintiff Gaddy reported for work but then refused to work in the field as directed and instead stated that he was taking "FMLA."

Defendants City, Reyes, Rooney, and Killman deny that Gaddy requested permission from any of them to leave work because of illness or that they refused any such request on November 7, 2003.

Defendants City, Reyes, Killman, and Rooney deny that plaintiff Gaddy exercised his right to take intermittent FMLA leave on November 7, 2003.

Defendant Haran lacks knowledge and information sufficient to form a belief as to the truth of whether Gaddy requested permission from City, Reyes, Rooney and Killman to leave work because of illness on November 7, 2003 or whether they refused any such request.

16

Defendant Haran denies that Gaddy requested permission from him to leave work because of illness or that he refused any such request on November 7, 2003.

43.    On or about November 12, 2003, Defendants held a pre-disciplinary hearing, attended by Defendant James Haran, Defendant Irma Rodriguez, and Defendant Charles Killman.

ANSWER:
Defendant Reyes and Rooney deny that they held a pre-disciplinary hearing on November 12, 2003.

Defendant Reyes and Rooney lack knowledge and information sufficient to form a belief as to the truth of who attended a pre-disciplinary hearing on November 12, 2003.

Defendants City, Killman and Haran admit that, on November 12, 2003, a predisciplinary hearing was held for plaintiff Gaddy, which was attended by Killman, Haran and Rodriguez. Also present at that meeting were plaintiffs' attorney Amy Epton, union steward Louis Flowers and union representative Mike Sexton.

44.    Following Plaintiff William B. Gaddy's pre-disciplinary hearing, Defendants James Haran, Steven Batinich, Irma Rodriguez, and Charles Killman consulted with Defendants William Rooney and Norma Reyes about Plaintiff William B. Gaddy's disciplinary suspension.

ANSWER:
Defendants City, Reyes, Rooney and Haran lack knowledge and information sufficient to form a belief as to the truth of plaintiffs' use of the terms "following" and "consulted" as alleged in this paragraph 44.

Defendants City, Reyes, and Killman admit that sometime after the November 12, 2003 predisciplinary hearings for Davis and Gaddy and before November 14, 2003, Reyes spoke with Killman regarding a 5 calendar day suspension for Gaddy for refusing to work in the field as ordered after having reported for work in the morning on November 7, 2003.

Defendants City, Reyes, Rooney and Haran deny that Reyes spoke with Rooney, Haran, Batinich and Rodriguez regarding a 5 calendar day suspension for Gaddy for insubordination for refusing to work in the field as ordered after having reported for work in the morning on November 7, 2003.

Defendants Killman and Rooney admit that they spoke with each other and defendant Irma Rodriguez, on November 12, following Davis and Gaddy's predisciplinary hearing, regarding a 15 calendar day suspension for Davis for his insubordination by refusing a direct order to work in the field after having reported for work in the morning on November 7, 2003.

17

45.     On or about November 17, 2003, Defendants suspended Plaintiff William B. Gaddy without pay, for a period of five (5) days.

ANSWER:

Defendants, City, Reyes, and Rooney admit that they caused a suspension to be issued by Irma Rodriguez to Gaddy for five calendar days for insubordination by refusing a direct order of Rooney and Rodriguez to work in the field after having reported for work in the morning on November 7, 2003.

Defendants Killman and Haran deny that they suspended Gaddy as alleged in paragraph 45.

46.     Similarly situated employees who were not disabled, and did not request FMLA leave, but who requested permission to leave work early [used to say "without notice" in original complaint], as a result of sudden illness, were not suspended and did not receive negative employment actions.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 because plaintiffs fail to identify the employees they believe are "similarly situated" or disabled.

Defendants City, Reyes, Killman, Rooney, and Haran deny that they are aware of any supervisors of building inspections who were ordered to work in the field, refused, and then stated that they needed to leave work as a result of a sudden illness.

Defendants City, Reyes, Killman, Rooney and Haran deny that they are aware that Gaddy or Davis stated that they needed to leave work for a sudden illness on November 7, 2003.

## COUNT I: SUBSTANTIVE VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. Section 2601 et seq.

47.     Plaintiffs repeat and reallege paragraphs 1-47, as though fully set forth herein.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran repeat and reallege their answers to paragraphs 1-47 as though fully set forth herein.

48.     Defendants had a substantive duty not to use FMLA protected leave as a negative factor in an employment decision, such as disciplinary actions, pursuant to 29 U.S.C. §2615 (a)(1).

18

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that they used FMLA protected leave as a negative factor in any employment decision, such as a disciplinary action.

Defendant City admits that 29 U.S.C. § 2615(a)(1) provides that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."

Defendants Reyes, Killman, Rooney and Haran lack knowledge and information sufficient to admit the truth of the remaining allegations of this paragraph because it calls for a legal interpretation of a provision of the FMLA.

49. Contrary to the above statutory enactment, Defendants, and each of them, used Plaintiffs' use of intermittent FMLA leave as a negative factor in the employment decision to suspend Plaintiffs without pay.

ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 49.

50. Defendants willfully, wantonly, and without good faith, violated the FMLA by knowingly using Plaintiffs' use of intermittent FMLA leave as a negative factor in the employment decision to suspend Plaintiffs without pay, thus interfering with Plaintiffs' substantive rights to utilize their FMLA leave, pursuant to 29 U.S.C. § 2615(a)(1).

ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 50.

WHEREFORE, Plaintiffs, and each of them individually, seek Judgment against Defendants, and each of them individually, as follows:

A. Enter a judgment declaring that Defendants' consideration of Plaintiffs' use of intermittent FMLA leave in a disciplinary action constitutes a substantive violation of the FMLA;

B. Enter a judgment for each Plaintiff in the amount of his lost wages, value of lost monetary benefits, and other monetary losses caused by Defendants' unlawful consideration of Plaintiffs' use of intermittent FMLA leave;

C. Enter a judgment awarding each Plaintiff interest at tile prevailing rate on

19

all lost salary, benefits, and other monetary losses;

      D.     Enter a judgment for each Plaintiff an additional equal amount as liquidated damages;

      E.     Award each Plaintiff his reasonable attorney fees and costs incurred by each Plaintiff in filing this action;

      F.     Issue an injunction deleting any negative reference, regarding the incidents at issue, to each Plaintiff in his employment file;

      G.     Enter an injunction prohibiting Defendants from violating Plaintiffs' future FMLA rights;

      H.     Grant each Plaintiff s such further relief as this court deem appropriate.

## ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the plaintiffs are entitled to any of the relief they seek in this wherefore clause of their amended complaint.

## COUNT II: RETALIATORY VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. Section 2601 et seq.

51.     Plaintiffs repeat and reallege paragraphs 1-46, as though fully set forth herein.

## ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran repeat their answers to paragraphs 1-46 as though fully set forth herein.

52.     Plaintiffs exercised FMLA protected rights by taking certified, intermittent FMLA leave. Plaintiff also exercised those rights by filing suit against Defendant, in defense of those rights. Defendants were legally prohibited from retaliating against Plaintiffs for exercising those rights, pursuant to 29 U.S.C. § 2615(a)(2).

## ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the plaintiffs exercised any FMLA protected rights on November 7, 2003 when they refused a direct order to work in the field after having reported for work and further denies that they filed this lawsuit in defense of any rights under the FMLA.

Defendant City admits that 29 U.S.C. § 2615(a)(2) provides that "it shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

Defendants Reyes, Killman, Rooney, and Haran lack knowledge or information sufficient to form a belief as to the truth of whether Section 29 U.S.C. § 2615(a)(2) applies to them, or Rodriguez and Batinich, as individuals.

Defendants Reyes, Killman, Rooney, and Haran deny that they retaliated against plaintiffs for exercising any rights under the FMLA at any time.

53.     Contrary to the above statutory enactment, Defendants, and each of them, retaliated against Plaintiffs for using their intermittent FMLA, by suspending them upon their return from the leave. Defendants' actions were wilful, wanton, and were intended to deprive Plaintiffs of their statutory FMLA rights.

ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 53.

54.     Similarly situated employees who were not FMLA certified, and did not request FMLA leave, but requested permission to leave work without notice, as a result of sudden illness, were not suspended and did not receive negative employment actions.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 54 because plaintiffs fail to identify the employees they believe are "similarly situated."

Defendants City, Reyes, Killman, Rooney, and Haran deny that they are aware of any supervisors of building inspections who were ordered to work in the field, refused, and then stated that they needed to leave work as a result of a sudden illness.

Defendants City, Reyes, Killman, Rooney and Haran deny that they are aware that Gaddy or Davis stated that they needed to leave work for a sudden illness on November 7, 2003.

55.     On or about January 16, 2004, Defendants retaliated against Plaintiff James Davis by denying the salary step increase, to which he was entitled by the collective bargaining agreement, within a time period of less than one month after Plaintiff filed suit against Defendants protecting Plaintiff James Davis' FMLA rights, when Defendants had never before denied Plaintiff James Davis' salary step increase, during Plaintiff James Davis' twenty-five year employment history with Defendants.

ANSWER:

Defendants City, Reyes, Rooney, Haran and Killman deny the allegations of this paragraph 55.

WHEREFORE, Plaintiffs, and each of them individually, seek Judgment against Defendants, and each of them individually, as follows:

A.  Enter a Judgment declaring that Defendants' retaliation against Plaintiffs' use of intermittent FMLA leave constitutes a violation of the FMLA;

B.  Enter a judgment for each Plaintiff in the amount of his lost wages, value of lost monetary benefits, and other monetary losses caused by Defendants' retaliation against of Plaintiffs' use of intermittent FMLA leave;

C.  Enter a judgment awarding each Plaintiff interest at the prevailing rate on all lost salary, benefits, and other monetary losses;

D.  Enter a judgment for each Plaintiff an additional equal amount as liquidated damages;

E.  Award each Plaintiff his reasonable attorney fees and costs incurred by each Plaintiff in filing this action;

F.  Issue a mandatory injunction deleting any negative reference to each Plaintiff, regarding the incidents at issue, in his employment file;

G.  Enter an injunction prohibiting Defendants from violating Plaintiffs future FMLA rights;

H.  Grant each Plaintiff s such further relief as this court deem appropriate.

ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny the plaintiffs are entitled to any of the relief they seek in this wherefore clause of their amended complaint.

## COUNT III
## FAILURE TO ACCOMMODATE
## AND DISCRIMINATION, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

56.     Plaintiffs repeat and reallege paragraphs 1- 46, as though fully set forth herein.[2]

ANSWER:

Defendants repeat their answers to paragraphs 1-46 as though fully set forth herein.

57.     Plaintiff James Davis was disabled within the meaning of the Americans with Disabilities Act, as he suffers from a disability that limits one or more of his major life activities, including but not limited to walking, working, self-care, and performing manual tasks.

ANSWER:

Defendants, City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of whether Davis was disabled within the meaning of the ADA. Defendants deny that they are aware that Davis is substantially limited in the performance of any major life activity, including walking, working, self-care and performing manual tasks, as a result of any medical condition he may have.

58.     Plaintiff James Davis was a qualified individual within the meaning of the Americans with Disabilities Act in that he was able, with or without accommodations, to perform the essential functions of his job for at least fourteen (14) years.

ANSWER:

Defendants, City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of whether Davis was a qualified individual within the meaning of the ADA within the last 14 years, or whether he was able to perform his job with or without accommodations.

59.     On November 7, 2003, Plaintiff James Davis requested the reasonable accommodation of postponing an unscheduled, non-urgent inspection for one working day.

ANSWER:

Defendants deny the allegations of this paragraph.

60.     Defendant refused to accommodate Plaintiff James Davis' reasonable request for accommodation, by suspending him without pay for a period of twenty days, as punishment for failing to perform the unscheduled, non-urgent inspection on November 7, 2003.

ANSWER:

Defendants deny the allegations of this paragraph.

---

[2]Plaintiffs' Amended Complaint incorrectly numbers paragraph 56 as paragraph 54, and all subsequent paragraphs in the Amended Complaint are incorrectly numbered. Defendants use the proper numbers in their Answer to the Amended Complaint.

23

61.     Plaintiff William B. Gaddy was disabled within the meaning of the Americans with Disabilities Act, as he suffers from a disability that limits one or more of his major life activities, including but not limited to walking, working, self-care, and performing manual tasks.

ANSWER:
        Defendants, City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of whether Gaddy was disabled within the meaning of the ADA. Defendants deny that they are aware that Gaddy is substantially limited in the performance of any major life activity, including walking, working, self-care and performing manual tasks, as a result of any medical condition he may have.

62.     Plaintiff William B. Gaddy was a qualified individual within the meaning of the Americans with Disabilities Act, in that he was able, with or without accommodations, to perform the essential functions of his job for at least ten (10) years.

ANSWER:
        Defendants, City, Reyes, Rooney, Haran and Killman are without knowledge or information sufficient to form a belief as to the truth of whether Gaddy was a qualified individual within the meaning of the ADA within the last 10 years, or whether he was able to perform his job with or without accommodations within the last 10 years.

63.     On November 7, 2003, Plaintiff William B. Gaddy requested the reasonable accommodation of postponing an unscheduled, non-urgent inspection for one workday.

ANSWER:
        Defendants City, Reyes, Rooney, and Killman, deny the allegations of this paragraph 63. Defendant Haran is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph 63.

64.     Defendant refused to accommodate Plaintiff William B. Gaddy's reasonable request for accommodation, by suspending him without pay for a period of five days, as punishment for failing to perform the unscheduled, non-urgent inspection on November 7, 2003.

ANSWER:
        Defendants deny the allegations of this paragraph 64.

65.     Defendant discriminated against both plaintiffs, in that similarly situated employees who were not disabled under the definition of the ADA, but who, as a result of sudden illness, requested permission to leave work without prior notice after they were instructed to perform an unscheduled inspection, were not suspended and did not receive negative employment actions.

24

ANSWER:

Defendants deny the allegations of this paragraph 64.

66.     Defendant's actions in failing to grant Plaintiffs' reasonable requests for accommodation and in discriminating against Plaintiffs were intended to deprive Plaintiffs of their rights under the ADA, and were effected with reckless disregard for those rights. Those actions of Defendant were willful, wanton, and malicious.

ANSWER:

Defendants deny the allegations of this paragraph 66.

67.     As a result of Defendant's unlawful conduct, Plaintiffs have suffered the loss of significant income and benefits, have suffered career damage. and have suffered pain, loss of enjoyment of life, inconvenience; and other injuries.

ANSWER:

Defendants deny the allegations of this paragraph 67.

WHEREFORE, Plaintiffs, and each of them individually, seek Judgment against Defendants, and each of them individually, as follows:

A       Enter a judgment declaring that Defendants' failure to grant Plaintiffs' reasonable requests for use accommodation constitutes a violation of the ADA;

B.      Enter a judgment for each Plaintiff in the amount of his lost wages, value of lost monetary benefits, and other monetary losses caused by Defendants' failure to grant Plaintiffs' reasonable requests for accommodation under the ADA;

C.      Enter a judgment awarding each Plaintiff interest at the prevailing rate on all lost salary, benefits, and other monetary losses;

D.      Enter a judgment for each Plaintiff an additional equal amount as liquidated damages;

E.      Award each Plaintiff his reasonable attorney fees and costs incurred by each Plaintiff in filing this action;

F.      Issue an injunction, requiring Defendant to delete any negative reference to each Plaintiff, regarding the incidents at issue, in his employment file;

G.      Enter an injunction prohibiting Defendants from violating Plaintiffs' future ADA rights;

H.      Grant each Plaintiff such further relief as this court deems appropriate.

25

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiffs are entitled to any of the relief requested in this wherefore clause of their amended complaint.

COUNT IV
PENDANT STATE COMMON LAW CLAIM OF INTENTIONAL INFLICTION
OF EMOTIONAL DISTRESS

68.     Plaintiffs repeat and reallege paragraphs 1-46, as though fully set forth herein.

ANSWER:

Defendants City, Reyes, Killman, Rooney, and Haran repeat their answers to paragraphs 1 through 46 as though fully set forth herein.

69.     Defendants have a common law duty not to intentionally and knowingly inflict severe emotional distress upon Plaintiffs.

ANSWER:

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph because it alleges a legal conclusion.  Defendants deny that they intentionally and knowingly inflicted severe emotional distress upon plaintiffs.

70.     Defendants violated their duty not to intentionally and knowingly inflict severe emotional distress upon Plaintiffs, by suspending them from their employment positions without cause, and by giving a falsely pretextual reason for the suspensions, which Defendants concocted, even though Defendants knew that this would negatively impact the pension benefits that Plaintiffs would soon receive, and even though Defendants knew that these suspensions created a risk that Plaintiffs could be terminated from their jobs, and that Plaintiffs would be effectively precluded from finding other employment because of their ages, and medical conditions, in addition to being precluded because of the falsely pretextual reason that Defendants had given for the suspension.

ANSWER:
Defendants deny the allegations of this paragraph 70.

71.     Defendants' behavior was outrageous in character and extreme in degree when, knowing that Plaintiffs suffer from severe and life-threatening medical conditions, and knowing that Plaintiffs were peculiarly susceptible to emotional distress because of Plaintiffs' understanding that they would have difficulty finding new employment following their job termination, Defendants summarily and abruptly suspended Plaintiffs for no reason without pay, immediately prior to the commencement of the holiday season, and caused Plaintiffs to reasonably apprehend their employment could be terminated, knowing that Plaintiffs would have great difficulty finding new employment because of their ages, medical conditions, and because

26

the reasons given for Plaintiffs' negative employment actions were false pretexts, that would effectively preclude plaintiffs from finding new employment; and caused Plaintiffs to fear that their pensions would be negatively impacted by the suspension and negative references in their employment personnel files, and caused Plaintiff James Davis' pension benefits to be negatively impacted by the suspension.

ANSWER:

     Defendants City, Reyes, Killman, and Rooney deny the allegations of this paragraph 71.

     72.    Defendants acted intentionally and recklessly, willfully, wantonly, in deliberate disregard for the high degree of probability that Plaintiffs would suffer severe emotional distress resulting from the unlawful violation of their FMLA rights, and resulting from their reasonable fear of termination, preclusion from other employment, and knowledge of negative impact upon Plaintiffs' pension benefits.

ANSWER:

     Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 72.

     73.    Plaintiffs, and each of them, suffered severe emotional distress, resulting in physical manifestations reported to each of their respective physicians, as a result of the loss of wages and the apprehension of imminent loss of employment.

ANSWER:

     Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 73.

     WHEREFORE, Plaintiffs, and each of them individually, seek Judgment against Defendants, and each of them individually, as follows:

A.    Enter a judgment awarding Plaintiffs, and each of them, all permissible compensatory damages;

B.    Enter a judgment awarding Plaintiffs, and each of them, all permissible punitive damages;

C.    Grant each Plaintiff such further relief as this court deem [sic] appropriate.

ANSWER:

     Defendants City, Reyes, Killman, Rooney, and Haran deny that plaintiffs are entitled to any of the relief requested in this wherefore clause of their amended complaint.

## COUNT V
## PENDANT STATE COMMON LAW CLAIM OF CIVIL CONSPIRACY

74.     Plaintiffs repeat and reallege paragraphs 1-46, as though fully set forth herein.

ANSWER:
      Defendants City, Reyes, Killman, Rooney, and Haran repeat their answers to paragraphs 1 through 46 as though fully set forth herein.

75.     Defendants James Haran, Steven Batinich, Irma Rodnguez, William Rooney, Charles Killman, and Norma Reyes, agreed amongst all of them to the actions of intentionally inflicting emotional distress upon Plaintiffs.

ANSWER:
      Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 75.

76.     Defendants' intentional infliction of emotional distress upon Plaintiffs was an unlawful, overt act, in that it was deliberately, willfully and wantonly performed, and was a violation of Defendants' common law duty not to inflict intentional emotional distress upon Plaintiffs.

ANSWER:
      Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 76.

77.     Defendants' unlawful act of intentionally inflicting emotional distress upon Plaintiffs, injured Plaintiffs by causing Plaintiffs loss of pay, by causing negative employment evaluations to be placed in Plaintiffs' employment records, by causing Plaintiff James Davis to have his pension benefits negatively impacted, and by causing Plaintiffs severe emotional distress, resulting in physical manifestations.

ANSWER:
      Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 77.

78.     Defendants' unlawful, overt act was done pursuant to and in furtherance of a common scheme to deprive Plaintiffs of their common law rights not to suffer emotional distress that his been intentionally inflicted.

ANSWER:
      Defendants City, Reyes, Killman, Rooney, and Haran deny the allegations of this paragraph 78.

28

WHEREFORE, Plaintiffs, and each of them individually, seek Judgment against Defendants, and each of them individually, as follows:

A.     Enter a judgment awarding Plaintiffs, and each of them, all permissible compensatory damages;

B.     Enter a judgment awarding Plaintiffs, and each of them, all permissible punitive damages;

C.     Grant each Plaintiff such further relief as this court deem appropriate.

ANSWER:

Defendants, City, Reyes, Killman, Rooney, and Haran deny that plaintiffs are entitled to any of the relief requested in this wherefore clause of their amended complaint.

## ADDITIONAL DEFENSES

1.     Plaintiffs failed to notify defendants that they were unable to perform the functions of their position on November 7, 2003 because of problems related to a serious health condition as required by 29 U.S.C. § 2612(a); 29 C.F.R. § 825.303; 29 C.F.R. § 825.306.

2.     Plaintiffs did not offer any medically necessary reasons for refusing to perform work as ordered on November 7, 2003, contrary to 29 U.S.C. § 2612(b)(1).

3.     To the extent plaintiffs needed medical leave on November 7, 2003, they failed to attempt to schedule their FMLA leave so as not to disrupt their employer's operations as required by 29 C.F.R. § 825.302(c) and § 825.117.

4.     To the extent this Court determines that any defendant violated Section 2615 of the FMLA by issuing a suspension to either plaintiff, defendants state that they believed in good faith that plaintiffs were not legitimately exercising any rights under the FMLA on November 7, 2003, but were attempting to avoid working in the field performing inspections, and that therefore, plaintiffs are not entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii).

5.     To the extent plaintiffs seek punitive or compensatory damages under the FMLA, they are not available under that statute.

6.     Plaintiffs' civil conspiracy claim  is barred by Sections 2-201 and 2-109 of the Tort Immunity Act because they challenge a discretionary decision by governmental employees acting within the scope of their employment. .

29

7.     Plaintiffs' intentional infliction of emotional distress claim is barred by Sections 2-201 and 2-109 of the Tort Immunity Act because they challenge a discretionary decision made by government officials acting within the scope of their employment.

8.     Defendants incorporate herein the defenses asserted in their Motion to Dismiss plaintiffs' Amended Complaint in part.

Respectfully submitted,

MARA S. GEORGES
Corporation Counsel of the
City of Chicago

BY:     _Allison Heverin_

PATRICIA CARROLL-SMIT
Senior Counsel
ALLISON HEVERIN
Assistant Corporation Counsel

30 North LaSalle Street
Suite 1020
Chicago, IL 60602
(312)744-6956/(312) 744-0449

Feb-25-2004 08:36am From-Case: 1:03-cv-08631 Document #: 15 Filed: 02/25/04 Page 32 of 36 PageID #:185 T-197 P.002/002 F-395

FEB-23-2004 17:24 FROM:LABOR                    3127443925                  TO:GDD12

## VERIFICATION

I, WILLIAM ROONEY, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have read the allegations set forth in plaintiffs' Gaddy and Davis's amended complaint and that my answers thereto are true and correct to the best of my knowledge and information.

WILLIAM ROONEY

# VERIFICATION

I, JAMES HARAN, under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, certify that I have read the allegations set forth in plaintiffs' Gaddy and Davis's amended complaint and that my answers thereto are true and correct to the best of my knowledge and information.

_____
JAMES HARAN

## VERIFICATION

I, NORMA REYES, under penalties as provided by law pursuant to Section 1-109 of the

Code of Civil Procedure, certify that I have read the allegations set forth in plaintiffs' Gaddy and

Davis's amended complaint and that my answers thereto are true and correct to the best of my

knowledge and information.

NORMA REYES
Commissioner
City of Chicago Department of Buildings

## VERIFICATION

I, CHARLES KILLMAN, under penalties as provided by law pursuant to Section 1-109

of the Code of Civil Procedure, certify that I have read the allegations set forth in plaintiffs'

Gaddy and Davis's amended complaint and that my answers thereto are true and correct to the

best of my knowledge and information.

**CHARLES KILLMAN**

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2004, I caused a copy of the aforementioned document to be mailed to the person at the above-referenced address on or before 5:00 p.m.

Allison Heverin